Case 1:15-cv-00129 Document 55 Filed on 03/15/17 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
March 15, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| G.C. DEVELOPMENT CORP., | § | |
|     Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No. B-15-129 |
| | § | |
| DR. JOE D. ZAYAS, | § | |
|     Defendant/Counter-Plaintiff. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On February 16, 2016, Plaintiff/Counter-Defendant G.C. Development Corporation ("G.C. Development") filed a motion for summary judgment and a motion for judgment on the pleadings. Dkt. No. 23. G.C. Development sought summary judgment in its favor for the claims that it brought – which related to the breach of a mediated settlement agreement – and judgment on the pleadings for the counterclaims made by Defendant/Counter-Plaintiff Dr. Joe D. Zayas ("Zayas").

On September 30, 2016, the District Judge granted both motions in favor of G.C. Development, expressly finding that Zayas "has breached" the settlement agreement. Dkt. No. 46.[1]

On October 14, 2016, G.C. Development filed a motion for attorney's fees. Dkt. No. 49. Zayas has filed a response in opposition. Dkt. No. 50. G.C. Development filed a reply brief. Dkt. No. 51. The parties disagree as to the relevant identity of the "local legal community" and the hourly rate for attorney's fees in that community. Dkt. Nos. 53, 54.

The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636(b).

The factual nature of the dispute between G.C. Development and Zayas is set out in the undersigned's previous report and recommendation on the motion for summary judgment and the Court will not rehash all of the facts. Dkt. No. 41. Stated briefly, G.C. Development

---

[1] This order was amended on October 7, 2016, to reflect minor corrections. Dkt. No. 47.

and Zayas entered into a mediated settlement agreement regarding a construction dispute. As part of the agreement, Zayas agreed to pay G.C. Development $162,000 by May 11, 2015. Zayas failed to make that payment and G.C. Development sued for breach of contract. Dkt. No. 1.

At this point, there are four questions before the Court: (1) if G.C. Development is entitled to attorney's fees as a matter of law; (2) if they are entitled to attorney's fees, who is the proper finder of fact for this issue; (3) what is a proper and reasonable award of attorney's fees in this case; and (4) if G.C. Development is entitled to reimbursement of court costs from Zayas.

After reviewing the record and the relevant case law, it is **RECOMMENDED** that the motion for attorneys fees and court costs be granted, but at the amounts identified below.

## I. Entitlement to Attorney's Fees

An award of attorney fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002). Thus, in a diversity case, state law "controls both the award of and the reasonableness of fees awarded." Id. Because Texas law controlled the substantive issues in this case, Texas law will also control the question of attorney's fees.

Texas law expressly states that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). Texas courts have consistently interpreted this statute to apply to claims for breach of contract. See Cytogenix, Inc. v. Waldroff, 213 S.W.3d 479, 489 (Tex. App. 2006) ("A party who prevails on a breach of contract claim may recover its reasonable attorney's fees pursuant to section 38.001(8) of the Texas Civil Practice and Remedies Code."). In order to be awarded such fees, the prevailing party must be awarded damages for the breach of contract claim. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex.1997) ("To recover

attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.").

G.C. Development has met the standard for receiving an attorney fee award. It prevailed on a breach of contract claim – for which fees are recoverable under Section 38.001(8) – and it was awarded damages for that breach. The entitlement to attorney fees follows from the award of damages for the breach.[2]

## II. Proper Fact-Finder

Zayas argues that the amount of attorneys fees must be determined by a jury; G.C. Development argues that it is a matter for the Court to decide. Based upon controlling precedent, Zayas is not entitled to a jury trial on the matter of attorney's fees.

Zayas is generally correct that Texas courts are required to submit the issue of attorneys' fees to a jury. Bill Miller Bar-B-Q Enterprises, Ltd. v. Gonzales, No. 04-13-00704-CV, 2014 WL 5463951, at *5 (Tex. App. Oct. 29, 2014). That conclusion is limited, however, by the fact that, "the right to a trial by jury in federal courts is a matter of federal law." Resolution Trust Corp. v. Marshall, 939 F.2d 274, 279 (5th Cir. 1991). Moreover, "[s]ince there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees." Id.

Accordingly, the Court is the proper fact-finder for this motion. Zayas's request for a jury trial on this issue should be denied.

## III. Amount of Attorneys' Fees

As to the attorney fees, the final issue for the Court to consider is the amount of attorneys fees that should be awarded to G.C. Development.

In this case, G.C. Development is seeking attorney's fees for three attorneys: Bill Kroger ("Kroger"), Meghan Dawson McElvy ("McElvy") and Caroline Carter ("Carter"). Kroger is a graduate of the University of Texas School of Law; is the co-chair of Baker

---

[2] The Court notes that "claims for attorney's fees belong to the litigants, not to their attorneys." Murrco Agency, Inc. v. Ryan, 800 S.W.2d 600, 603 (Tex. App. 1990).

3

Botts's energy litigation practice group; and has over 25 years of experience. Dkt. No. 53-1, p. 21. McElvy is a graduate of the University of Chicago School of Law; clerked for United States District Judge Andrew Hanen; has been recognized as a "Texas Super Lawyer–Rising Star;" and has 7 to 10 years of experience. Dkt. No. 53-1, p. 14. Carter is a graduate of the University of Texas School of Law; clerked for United States District Judge Ewing Werlein; and has 3 to 5 years of experience. Dkt. No. 53-1. Baker Botts also seeks fees for work done by paralegals that "was legal in nature and which an associate would have been required to handle at a higher billing rate if the paralegal had not assisted." Dkt. No. 53, p. 6.[3]

As to Kroger, G.C. Development seeks an hourly billing rate of $807.50 for work performed in 2015 and $831.25 for work performed in 2016. Dkt. No. 49-1, pp. 2-3. As to McElvy, G.C. Development seeks an hourly billing rate of $570.00 for work performed in 2015 and $593.75 for work performed in 2016. Id. As to Carter, G.C. Development seeks an hourly billing rate of $427.50 for work performed in 2015 and $522.50 for work performed in 2016. Id. As to its paralegals, G.C. Development seeks an hourly billing rate of $261.25 for work performed in 2015 and $270.75 for work performed in 2016. Id. As to its paralegal clerk, G.C. Development seeks an hourly billing rate of $156.75 for work performed in 2016. Id. In sum, G.C. Development seeks $133,715.56 in attorney's fees.

Zayas asserts that G.C. Development is entitled to, at most, $23,864.50 in attorney's fees. Dkt. No. 54-5.

As previously noted, the Court generally applies Texas law in determining attorney fee awards. Mathis, 302 F.3d at 461. In determining such fees, Texas utilizes the "lodestar" method. El Apple I, Ltd. v. Olivas, 370 S.W.3d 757, 760 (Tex. 2012). Thus, the Court must determine a reasonable hourly rate for counsel as well as the reasonable number of hours worked and multiply those figures to arrive at a total fee award. Id. "The lodestar figure may

---

[3] Reimbursement for paralegal and clerk fees are permissible in an attorney's fees motion. League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist., 119 F.3d 1228, 1235 (5th Cir. 1997).

then be adjusted for factors known as multipliers, including the complexity of the case, the skill of the attorney, whether the fee is contingent, and the novelty of the issues raised." Dillard Dep't Stores, Inc. v. Gonzales, 72 S.W.3d 398, 412 (Tex. App. 2002).

### A. Hourly Rate

The hourly rate is determined "according to the prevailing market rates in the relevant community." McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011). "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002). Moreover, "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'" Hopwood v. State of Texas, 236 F.3d 256, 281 (5th Cir. 2000). "The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere." In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008).

The parties dispute what constitutes the "community in which the district court sits" in this particular case. Zayas asserts that the relevant community is Brownsville, Texas, where this case was decided. Dkt. No. 50. G.C. Development asserts that the relevant community is the much larger area encompassing all of the Southern District of Texas. Dkt. No. 51.

There is no precise definition of the term "community where the district court sits." Most of the cases, however, have focused on the city/region where the district court heard the case. See Hopwood, 236 F.3d at 281 (applying market rates for Austin, where the litigation was heard); Fabela v. City of Farmers Branch, Tex., No. 3:10-CV-1425-D, 2013 WL 2655071, at *4 (N.D. Tex. June 13, 2013) (applying market rates for Dallas, Texas, again, where the litigation was decided); In re Enron, 586 F. Supp. 2d at 790 (S.D. Tex. 2008) (applying market rates in Houston, Texas, for case decided in Houston); Scham v.

Dist. Courts Trying Criminal Cases, 148 F.3d 554, 558 (5th Cir. 1998)[4] (applying rates in Houston, Texas for case litigated in Houston).

This distinction makes sense. If the Fifth Circuit had intended for the Court to consider the entire district to be the touchstone of calculating attorney fee awards, it would have stated that the Court was to consider "the prevailing market rates across the district," or something to that effect. The Fifth Circuit did not, and instead, chose to focus on the "community" where the Court sits. This Court has jurisdiction throughout the Southern District of Texas, but it sits in Brownsville.

Furthermore, Texas law provides that the Court should examine the prevailing hourly rates "in the community." West v. West, No. 01-14-00350-CV, 2016 WL 1719328, at *7 (Tex. App. Apr. 28, 2016). Texas courts have looked to the prevailing rate in the county where the case was tried. Goudeau v. Marquez, 830 S.W.2d 681, 683-84 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (examining prevailing rate for Harris County for case tried in Houston); Chess v. Chess, 627 S.W.2d 513, 516 (Tex. App. 1982) (same).

G.C. Development has cited two cases, which considered the entire district as the relevant community. Dkt. No. 53, pp. 2-3 (citing Bender v. Tatum, No. 4:15-CV-146-LG-CMC, 2016 WL 1546058, at *2 (E.D. Tex. Apr. 15, 2016) & Rouse v. Target Corp., 181 F. Supp.3d 379, 385 (S.D. Tex. 2016)). Neither case discusses why the entire District, as opposed to the local community, is the proper geographic region to focus on and are of limited value in resolving this motion. This Court is not bound by the decisions of other district courts. Zurich Ins. PLC v. Ethos Energy (USA) LLC, No. 4:15-CV-03580, 2016 WL 4363399, at *3 (S.D. Tex. Aug. 16, 2016) (collecting cases).

Given the express language, which focused upon the community where the Court sits, the best interpretation would seem to be that the fees are based upon the location of the court that decided the case. Accordingly, the fees in this case should be measured by those

---

[4] Scham was abrogated on other grounds in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001).

6

prevailing in the Brownsville Division, specifically, and the Rio Grande Valley, generally. The entire Southern District is too broad of a community to reflect the proper rates for attorney compensation. Attorney fee awards are intended to compensate a prevailing party for what it would normally cost to receive quality and competent representation in the local legal market.[5] Hopwood, 236 F.3d at 281.

"Generally in the Fifth Circuit the determination of a reasonable hourly rate for attorneys in a particular community is established by affidavits of other attorneys of similar caliber practicing in that community." In re Enron Corp., 586 F. Supp. 2d at 756. Zayas has produced affidavits from three attorneys in the Brownsville area, testifying as to the rates in the community. For a senior litigation partner, they identify a rate of $225 to $300 per hour. Dkt. Nos. 54-1, 54-2, 54-3. For a senior litigation associate, they identify a rate of $200 to $225 per hour. Id. For a junior litigation associate, they identify a rate of $150 to $175 per hour. Id. For work performed by non-attorneys, they identify a rate of $65 per hour. Id.

Zayas also submitted the 2015 State Bar of Texas Hourly Fact Sheet. Dkt. No. 54-4. The fact sheet reflects that the median hourly rate in South Texas[6] for commercial litigation is $275 per hour. Dkt. No. 54-4, p. 19. The fact sheet also reflects that the median hourly rate for attorneys with over 25 years of experience is $250, for attorneys with 7 to 10 years of experience is $225, and for attorneys with 3 to 6 years of experience is $185. Id, p. 21.

Accordingly, the Court finds that the prevailing hourly rate in the local legal community is $300 for Kroger, $225 for McElvy and $185 for Carter. This finding, however, does not end the Court's analysis.

The Court must also consider the following factors when determining the

---

[5] The Court notes that if the roles were reversed, i.e. that Zayas had prevailed and sought attorneys fees, it doubts that G.C. Development would have acquiesced to Zayas's attorney being paid an hourly rate based upon the entire Southern District of Texas, including Houston. The focus is upon where the litigation occurred, not the market in which the firm is located. In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008).

[6] South Texas is defined as Cameron, Hidalgo and Webb Counties. Dkt. No. 54-4, p. 24.

reasonableness of the fees:

>(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
>(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
>(3) the fee customarily charged in the locality for similar legal services;
>
>(4) the amount involved and the results obtained;
>
>(5) the time limitations imposed by the client or by the circumstances;
>
>(6) the nature and length of the professional relationship with the client;
>
>(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
>(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).[7] Not all such considerations apply – nor need they be applied – in determining the proper level of attorney fees in the instant case. Instead, "[t]he court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services." Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc., No. CIV.A. H-09-2695, 2011 WL 3271335, at *4 (S.D. Tex. July 28, 2011) (citing Davis v. Bd. of Sch. Comm'rs of Mobile Cnty., 526 F.2d 865, 868 (5th Cir. 1976)).

In this case, the Court finds that the nature and length of the professional relationship with the client necessitates a higher fee for G.C. Development's attorneys. As previously noted, this case revolved around the breach of a mediated settlement agreement. The

---

[7] The Court notes that these factors are very similar to the factors employed in determining attorney fee issues in federal question jurisdiction cases. Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989).

attorneys who litigated the matter in this Court were the same attorneys who represented G.C. Development in the settlement talks and had extensive knowledge of the facts of this case. If G.C. Development had been forced to retain different local counsel to litigate this matter, that local counsel would have incurred additional costs to ascertain the facts of this case. By continuing with Baker Botts, G.C. Development was able to bypass both formal and informal discovery costs and hours. When counsel's experience results in fewer hours billed to the client, it "should be counterbalanced by a higher hourly fee." LULAC, 119 F.3d at 1235.

Furthermore, the experience, reputation, and ability of the lawyers employed by G.C. Development seem obvious. They each possess excellent academic credentials and have shown themselves to be highly capable. Baker Botts is an international law firm with hundreds of attorneys.[8] According to the hourly rate sheet, there are no firms of comparable size in Cameron County. Dkt. No. 54-4, p. 22 (noting that the largest firms in the region number 11 to 24 attorneys). Thus, there is no comparable law firm in the Rio Grande Valley. Lawyers with a similar background to Kroger, McElvy and Carter would almost certainly command the highest possible rates in the local legal market if they worked for a local firm. That conclusion, however, does not automatically entitle G.C. Development to the full amount of fees that it seeks.

G.C. Development has asserted that "this exact same Court has previously determined that the rates of Baker Botts' Houston partners and Houston associates are reasonable, and generally below the rates' of its competitors," citing In re ASARCO LLC, No. 05-21207, 2011 WL 2974957, at *17, 20 (Bankr. S.D. Tex. July 20, 2011), aff'd in part, rev'd in part and remanded, 477 B.R. 661 (S.D. Tex. 2012) (Hanen, J.), rev'd on other grounds, 135 S.Ct. 2158 (2015). Dkt. No. 53, p. 3. While this statement accurately reflects the Court's holding

---

[8] It has been reported that Baker Botts is the 65th largest law firm in the United States with 629 attorneys. Cristina Violante, Law360 Reveals 400 Largest U.S. Firms, Law360 (March 24, 2016), https://goo.gl/BJwESw.

9

in that case, it fails to take into account that the Bankruptcy Court was comparing Baker Botts to "competitor firms headquartered outside New York or California" and "other large Texas firms" as well as "comparable firms in other bankruptcy cases pending in Corpus Christi, Dallas, Houston and San Antonio." In re ASARCO LLC, 2011 WL 2974957, at *17. Thus, Baker Botts' fees were being compared to other large law firms throughout the country and the comparison was not confined to the Southern District of Texas generally (or the Brownsville Division specifically). For that reason, the Court believes that the ASARCO decision is of limited applicability in determining the proper fee rate in this breach of contract case.

Given all of the factors discussed above, the Court finds that a proper hourly rate in this case is $500 for Kroger, $375 for McElvy and $250 for Carter. This rate reflects the prevailing rates in the Rio Grande Valley, while taking into account the attorneys' ongoing relationship with the client and their skill, reputation, and experience.

As for any work performed by a non-attorney, the Court finds that the prevailing rate in the local legal community is $65, based upon the affidavits provided by local counsel.

### B. Hours Worked

"The party seeking attorney fees must present evidence of a reasonable fee for only those services necessarily rendered in connection with the claim for which recovery of attorney fees is authorized, segregated from those services rendered in connection with other claims." Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624 (Tex. App. 1987), writ denied (June 29, 1988). "[T]he services for which reasonable fees may be awarded include those rendered in connection with all claims, even if recovery of attorney fees is not authorized for such claims, if they arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." Id., p. 624-25.

The Court has reviewed the billing records provided by Baker Botts. Zayas has argued that G.C. Development is not entitled to attorney's fees for its defense of the

counterclaims filed by Zayas. This argument is not supported by the caselaw or the record.

As previously noted, this case was about the breach of a mediated settlement agreement. In his counterclaims, Zayas asserted that G.C. Development acted tortiously and fraudulently by misrepresenting their claims during the settlement negotiations. Dkt. No. 41, pp. 18-20. Thus, defense against the counterclaims was part and parcel of the breach of contract claim. In order to succeed on the breach of contract claim, G.C. Development had to defeat the fraud claim. See Harris v. Archer, 134 S.W.3d 411, 427 (Tex. App. 2004) (a contract procured by fraud is voidable). Because the claims were so intertwined, G.C. Development is entitled to attorney's fees for its defense of the counterclaims. Flint, 739 S.W.2d at 624.

On the other hand, G.C. Development is not entitled to attorney's fees for time spent litigating the issue of a constitutional lien, a theory put forth by G.C. Development. The Court rejected G.C. Development's constitutional lien claim. Dkt. No. 41, pp. 15-17, Dkt. No. 47. G.C. Development is not entitled to fees for an unsuccessful cause of action. See Chilton Ins. Co. v. Pate & Pate Enterprises, Inc., 930 S.W.2d 877, 896 (Tex. App. 1996), writ denied (Feb. 13, 1998) ("Generally, a party is required to segregate fees between claims for which fees are recoverable and those for which they are not, and between successful and unsuccessful causes of action.").

After reviewing the billing records, the Court finds that Carter spent 11.1 hours litigating the constitutional lien claim and McElvy spent .5 hours doing the same. G.C. Development is not entitled to attorneys' fees for these hours.

Furthermore, it has been represented to the Court that G.C. Development is only seeking attorney's fees for approximately 63 percent of the hours billed to the paralegals. Dkt. No. 53-1, p. 5, n. 1. While G.C. Development has included all of the billing records for the paralegals, it has not broken out which hours and tasks comprise the 63 percent for which it seeks paralegal fees. Accordingly, the Court will multiply the total hours billed by the paralegal by 63 percent to arrive at a final number of hours. The paralegals billed a "raw"

total of 35.4 hours in this litigation.

After making the aforementioned adjustments, the Court finds that Kroger's time should be billed for 4.4 hours, McElvy's should be billed for 49.2 hours, Carter's time should be billed for 176.6 hours and the paralegal time should be billed for 22.3 hours.

Thus, Zayas should be required to pay $2200 for Kroger's time (4.4 hours at $500/hr); $18,450 for McElvy's time (49.2 hours at $375/hr); $44,150 for Carter's time (176.6 hours at $250/hr); and $1449.50 for the paralegal's time (22.3 hours at $65/hr). This comes to a total of $66,249.50, which should be awarded to G.C. Development as attorney's fees.

G.C. Development has sought prospective appellate attorney's fees of $75,000, in the event that Zayas appeals. Dkt. No. 49, p. 6. This request should be denied. There is no way to know, in advance, what the attorney's fees would be if an appeal ensued. If Zayas pursues an appeal and the appeal is unsuccessful, G.C. Development can petition the Fifth Circuit to award attorney's fees. Metro. Life Ins. Co. v. Bischoff, 127 F. App'x 121, 122 (5th Cir. 2005) (citing 5TH CIR. R. 47.8).

## IV. Court Costs

G.C. Development has also sought court costs in this case.

Because G.C. Development prevailed on its breach of contract claim, it is entitled to court costs under FED. R. CIV. P. 54(d). G.C. Development seeks $400 in costs for the filing fee required to initiate this action. Dkt. No. 49-3. Such filing fees are appropriately considered court costs and should be assessed against Zayas.

## V. Recommendation

It is recommended that the motion for attorney's fees and costs filed by G.C. Development be granted.

It is further recommended that the Court order Joe D. Zayas to pay G.C. Development $66,249.50 in attorney's fees and $400 in costs.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the

Honorable Andrew S. Hanen, United States District Judge.  28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to file timely objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on March 15, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge